ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2012 JUN 29 PM 1:19
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| ANGELA BLACKSHEAR, as guardian on behalf of M.B., a minor, <br><br>Plaintiff, <br><br>v. <br><br>MICHAEL J. ASTRUE, Commissioner of Social Security Administration, <br><br>Defendant. | CV 311-073 |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Angela Blackshear ("Plaintiff"), proceeding on behalf of her daughter, M.B. ("Claimant"), appeals the decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

I. **BACKGROUND**

Based on a protective filing date of October 30, 2008, Plaintiff filed an application for SSI benefits on behalf of her daughter, alleging she has been disabled since November 1, 2007 due to back pain and related symptoms. Tr. ("R."), pp. 151-58. The Social Security Administration denied Plaintiff's applications initially, R. 76, 78-81, and on reconsideration, R. 77, 86-89. Plaintiff then requested a hearing before an Administrative Law Judge

("ALJ"), and the ALJ held a hearing on September 30, 2010. R. 38-75. In the September 2010 hearing, the ALJ heard testimony from Plaintiff and Claimant, who were represented by an attorney. R. 48-56, 59-74. On October 29, 2010, the ALJ issued an unfavorable decision. R. 10-26.

Applying the three-step sequential process required by 20 C.F.R. § 416.924, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since October 30, 2008, the application date (20 C.F.R. § 416.924(b) & 416.971 *et seq.*).

2. The claimant has the following severe impairment: pain disorder (20 C.F.R. § 416.924(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.924, 416.925, & 416.926). The claimant does not have an impairment or combination of impairments that functionally equals the listings (20 C.F.R. §§ 416.924(d) & 416.926(a)). Thus, the claimant has not been disabled, as defined in the Social Security Act, since October 30, 2008, the date the application was filed (20 C.F.R. § 416.924(a)).

R. 16-26.[1]

When the Appeals Council denied Plaintiff's request for review of the ALJ's October 29, 2010 decision, R. 1-5, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action on Claimant's behalf in the United States District Court for the Southern District of Georgia requesting reversal

---

[1]The ALJ also noted that Claimant was a "school-age child" at the time of her application for SSI benefits and that she was an "adolescent child" as of the date of his decision. R. 16; see 20 C.F.R. §§ 416.926a(b)(1) & (f) (explaining different levels of development and functioning expected for different age groups).

of the adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because: (1) the ALJ failed to give proper controlling weight to the opinion of one of Claimant's treating physicians and (2) the ALJ erred in his finding that Claimant did not functionally equal the Listings of Impairments in Appendix 1, Subpart P ("Listings") because he failed to find that she has a "marked" limitation in the functional domain of moving about and manipulating objects and an "extreme" limitation in the functional domain of health and physical well-being. (See doc. no. 10 (hereinafter "Pl.'s Br.").) The Commissioner maintains that the Commissioner's decision was supported by substantial evidence and should be affirmed. (See doc. no. 11 (hereinafter "Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).

3

Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner's decision even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

#### A. The ALJ Properly Evaluated the Opinion on Disability Offered by Claimant's Treating Physician

Plaintiff asserts that the ALJ committed error by improperly discounting the opinion of Claimant's treating physician, William Shillings, M.D., who opined that Claimant should be entitled to SSI benefits. Pl.'s Br., pp. 7-8. By contrast, the Commissioner argues that Dr. Shillings' opinion on disability is not entitled to controlling weight because it is conclusory

4

and because it is an opinion on an issue reserved to the Commissioner; thus, the Commissioner asserts that the ALJ's decision to discredit this opinion is supported by substantial evidence. Comm'r's Br., pp. 15-17.

To begin, it is well-settled that in the Eleventh Circuit a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

That having been said, the Commissioner is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991). Finally, under SSR 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p; see also 20 C.F.R. § 416.927(e).

In a letter he wrote on June 21, 2010, Dr. Shillings explained that Claimant presented to him in June of 2008 with "complaints of chronic back pain and extreme fatigue." R. 671. Despite sending Claimant to numerous specialists, who performed a variety of diagnostic tests, Dr. Shillings stated that his exhaustive efforts over the course of two years to diagnose

5

Claimant were unsuccessful. Id. Nevertheless, Dr. Shillings asserted, "There is no doubt in my mind that [Claimant] is in severe pain on a daily basis, and that her pain will continue to worsen over time." Id. He further opined, "It is my professional opinion that [Claimant] should definitely qualify to receive SSI. I realize that without a concrete diagnosis it is difficult to determine eligibility, but I firmly believe that [Claimant] is in desperate need of this medical/financial assistance." Id. The ALJ agreed with Dr. Shillings' statement that it was difficult for him to determine whether Claimant was entitled to SSI without a concrete diagnosis. R. 17-18. However, precisely because Claimant had no discrete diagnosis for her back pain symptoms, the ALJ found Dr. Shillings' opinion on disability to be conclusory, and therefore entitled to "little weight." R. 18. Moreover, the ALJ observed that Dr. Shillings' statement that Claimant was in "need of medical/financial assistance" focused on Claimant's need for financial assistance rather than the relevant inquiry of whether she satisfied the requirements to establish disability. R. 18.

There is no dispute that Dr. Shillings is Claimant's treating physician, and thus his medical opinions, if supported by relevant evidence and consistent with the record as a whole, are entitled to substantial weight. Hillsman, 804 F.2d at 1181; 20 C.F.R. §§ 416.927(d)(3)-(4). However, the Court agrees with the Commissioner that Dr. Shillings' conclusion that Claimant is entitled to SSI – which is equivalent to an opinion that Claimant is disabled – is an opinion on an administrative issue reserved to the Commissioner. 20 C.F.R. § 416.927(e)(1). Accordingly, it is not entitled to controlling weight or special significance. SSR 96-5p.

Furthermore, the ALJ specifically noted that Dr. Shillings' opinion that Plaintiff is entitled to SSI is conclusory because it is not supported by a definitive diagnosis or other medical evidence and is instead based on Claimant's need for financial or medical

6

assistance.[2] R. 17-18. Lack of evidentiary support is a proper basis for discounting a treating physician's opinion. Lewis, 125 F.3d at 1440; see also 20 C.F.R. § 416.927(d)(3)-(4). The Court therefore agrees with the ALJ's conclusion that Dr. Shillings' opinion on disability was of little evidentiary value, and accordingly it was not error for the ALJ to afford this opinion little weight in his decision. Thus, Plaintiff is not entitled to relief on this issue.

### B.     Functional Equivalence

Plaintiff also argues that the ALJ erroneously concluded that Claimant did not functionally equal the Listings because he failed to find that she has a "marked" limitation in the functional domain of moving about and manipulating objects and because he failed to find that she has an "extreme" limitation in the domain of health and physical well-being. Pl.'s Br., pp. 7-9. The Commissioner contends that the ALJ's finding that Claimant did not functionally equal the Listings is supported by substantial evidence in the record and should therefore not be disturbed. Comm'r's Br., pp. 9-12, 14-15. The Court resolves the matter as follows.

A three-step sequential evaluation is used to evaluate disability in children. 20 C.F.R. § 416.924. At the first step, the Commissioner must determine whether the child is engaging in substantial gainful activity; if so, the claim is denied. Id. § 416.924(b). At the second step, the Commissioner must determine whether the child has a severe impairment or combination of impairments; if the child does not have any severe impairments, the claim is denied. Id. § 416.924(c). At the third and final step, the Commissioner must determine whether the child's impairments meet, medically equal, or functionally equal the Listings.

---

[2]Of course, the Court notes that the ALJ did not discredit all of Dr. Shillings' findings in his various treatment notes; rather, he simply discredited Dr. Shillings' conclusion as to disability. See R. 17-18. Thus, Dr. Shillings' treatment notes were not discredited, and they may be relied upon for evidentiary support.

7

Id. § 416.924(d); see Shinn ex rel. Shinn v. Comm'r of Soc. Sec., 391 F.3d 1276, 1278-79 (11th Cir. 2004) (discussing three-step sequential process for assessing whether a child is eligible for disability benefits).

Plaintiff appears to take issue with the fact that the ALJ "summarily determined without comment" that Claimant did not meet a Listing, yet she only provides arguments with respect to her contention that Claimant functionally equaled the Listings. See Pl.'s Br., p. 5. Accordingly, the Court restricts its step-three analysis to functional equivalence. Functional equivalence can be found by assessing a child's overall functional limitations which result from her severe impairment or combination of impairments. 20 C.F.R. § 416.926a. In determining functional equivalence, the Commissioner must consider the impact of the child's impairment or impairments on six domains, which are "broad areas of functioning intended to capture all of what a child can or cannot do." Id. § 416.926a(b)(1). These domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for [one]self; and (6) health and physical well-being. Id. Functional equivalence requires a "marked" limitations in two domains or an "extreme" limitation in one domain. Id. § 416.926a(a).

A marked limitation is one that "interferes seriously" with a claimant's ability to independently initiate, sustain or complete activities, while an extreme limitation is one that "interferes very seriously" with a claimant's ability to initiate, sustain, or complete activities. Id. §§ 416.926a(e)(2)-(3). However, a rating of extreme is reserved for only the "worst limitations," although this "does not necessarily mean a total lack or loss of ability to function." Id. § 416.926a(e)(3).

8

### 1. ALJ's Findings on Functional Equivalence Should Not to Be Considered in Isolation

Plaintiff first argues that the ALJ's analysis was too sparse to support his functional equivalence findings. Pl.'s Br., p. 7. It will be useful to set out the ALJ's findings here. In assessing Claimant's functional limitations in the domain of moving about and manipulating objects, the ALJ stated the following: "<u>The claimant has less than [a] marked limitation in moving about and manipulating objects</u>. She cannot take physical education nor can she do any significant lifting, but she can do other activities such as swimming or bike riding." R. 24 (emphasis in original). In assessing the domain of health and physical well-being, the ALJ stated, "<u>The claimant has marked limitation in health and physical well-being due to pain syndrome</u>." R. 25 (emphasis in original). Because Claimant did not have two marked limitations or one extreme limitation, the ALJ concluded that Claimant was therefore not disabled. R. 26.

Specifically, Plaintiff contends that the ALJ's two-sentence analysis of Claimant's functioning in the domain of moving about and manipulating objects was insufficient, and the ALJ failed to provide any analysis of Claimant's functioning in the domain of health and physical well-being. See id. Yet as the Commissioner correctly argues, the ALJ need not recite the factual basis for his functional domain findings so long as it is clear that those findings are supported by substantial evidence considered elsewhere in the ALJ's decision. See Turberville ex rel. Rowell v. Astrue, 316 F. App'x 891, 893 (11th Cir. 2009) (*per curiam*) (holding that it was unnecessary for ALJ to explicitly discuss why claimant did not functionally equal the Listings where it was clear ALJ's findings elsewhere in his decision supported his ultimate conclusion as to functional equivalence); Johnson v. Barnhart, 148 F.

9

App'x 838, 842 (11th Cir. 2005) (*per curiam*) (same). As set forth below, the ALJ considered numerous pieces of medical evidence before addressing the domains used to assess functional equivalence.

In his decision, the ALJ began by noting that despite undergoing multiple medical tests, Claimant has not obtained a diagnosis for the cause of her pain symptoms, which are primarily in her back, but at times affect her arms and legs. R.16. The ALJ further observed that Claimant first complained of pain in her mid and upper back in November of 2007 and that she saw Dr. Shillings for treatment from June of 2008 through June of 2010. R. 17, 464-79, 487-90, 551-73. The ALJ also noted that Claimant reported that her right foot swells at times, making it difficult to walk, and she complained of having severe pain in her feet about twice per month. R. 19, 73.

The ALJ also noted that in November of 2008, Donna L. Gibbas, M.D., diagnosed Claimant with "chronic severe back pain" and noted that she was in significant pain while lying supine. R. 17 (citing R. 668-69). Further, Claimant was noted to have a restricted ability to bend and "lacks 20 inches of forward stretch." R. 17, 669. Moreover, the ALJ noted Dr. Gibbas' observation that Claimant had moderate tightness in her neck, left shoulder, and right elbow, that both of Claimant's hips were "quite tender" to internal and external rotation and flexion, and that her knees were tender to extension. R. 17, 669. However, the ALJ noted that Dr. Gibbas observed Claimant's gait, as well as her muscular exams, to be "normal." Id.

The ALJ further noted that Jed Axelrod, M.D., performed an exam of Claimant on June 23, 2010, in which he observed that Claimant ambulated with a very stiff back posture,

had tenderness over her paraspinal region from her neck to the base of her spine, and had difficulty lying supine comfortably. R. 17 (citing R. 651-52). The ALJ also noted Dr. Axelrod's statement that Claimant had "limited forward flexion as well as limited extension and lateral bending." R. 17 (citing R. 651). On the other hand, the ALJ noted Dr. Axelrod's findings that Claimant had no discomfort with the range of motion in her knees, hips, and ankles bilaterally, and she had a painless and full range of motion in her upper extremities. R. 17 (citing R. 651-52). Moreover, the ALJ noted that MRI exams of Claimant's brain and spine performed in May and October of 2008 revealed normal findings. R. 16-17 (citing R. 329, 460). The ALJ further noted that one doctor questioned whether Plaintiff's symptoms might be mental in origin, stating that "[t]here was some question as to somatization disorder." R. 16 (citing R. 329).

Additionally, the ALJ observed that discharge notes from a four-week course of physical therapy treatment from May to June of 2008, revealed that Claimant was able to tolerate mild massage to her bilateral paraspinal area. R. 16, 407. The ALJ also noted that at that time, Claimant reported that riding her bike and swimming did not cause increased pain to her lower back, and she was encouraged to ride her bike and swim "as long as no pain was reported." Id. Further, the ALJ noted that Claimant's back pain required her to be home-schooled for several months in late 2008, although she had since returned to school full-time and had recently been given an accommodation for sitting or standing at school as needed to relieve pain. R. 18, 62, 188, 479. Moreover, the ALJ noted that Claimant cannot participate in physical education class and uses a rolling book bag because she cannot carry her books. R. 18, 192.

After considering the evidence, the ALJ concluded that Claimant's pain symptoms were not as severe as she alleged because she "has had multiple tests with no definitive diagnosis of pain" and because "her symptoms are basically controlled with medications." R. 19-20. Specifically, the ALJ noted that Claimant's mother testified at the hearing that Claimant's daily pain medications "just take[] the edge off the pain." R. 19 (citing R. 71-72). As further support, the ALJ observed that a mental health doctor noted that Claimant was not taking her medication, but stated that the medication had helped her. R. 19-20, 664.

In sum, as set out above, it is clear that the ALJ considered numerous pieces of medical and testimonial evidence before making his functional domain findings and concluding that Claimant did not functionally equal the Listings. R. 24-25. The Court thus proceeds to address whether the domain findings are supported by substantial evidence. The Court first turns to Plaintiff's argument regarding the ALJ's finding that Claimant experiences less than a marked limitation in the domain of moving about and manipulating objects. R. 26.

### 2. The ALJ's Finding that Claimant Has Less than a Marked Limitation in the Domain of Moving About and Manipulating Objects Is Not Supported by Substantial Evidence

With respect to the domain of moving about and manipulating objects, the ALJ must consider how the claimant moves her body from one place to another and how she manipulates and moves things – activities which require gross or fine motor skills, or both. 20 C.F.R. § 416.926a(j); SSR 09-6p. Because the ALJ found that Claimant was a school-age child at the time Plaintiff applied for benefits but matured to an adolescent child by the time of his decision, the Court will examine the different levels of functioning expected for each

age group in the domain of moving about and manipulating objects.

The Regulations provide that a school-age child (age 6 through the attainment of age 12) should be able to "move at an efficient pace about [her] school, home, and neighborhood," and "enjoy a variety of physical activities, such as running and jumping, and throwing, kicking, catching, and hitting balls in informal play or organized sports." 20 C.F.R. § 416.926a(j)(2)(iv). Further, a school-aged child's development of fine motor skills should enable her to do things like write and use kitchen and household tools independently. Id. The Regulations also provide that an adolescent child (age 12 through the attainment of age 18) should be able to freely and easily move about her school, neighborhood, and community, and she should be able to engage in "a full range of individual and group physical fitness activities[,] should show mature skills in activities requiring hand-eye coordination, and should have the fine motor skills needed to write efficiently on a keyboard." Id. § 416.926a(j)(2)(v).

Here, the Court concludes that the ALJ's analysis of Claimant's functioning in the domain of moving about and manipulating objects was insufficient because his findings that she can swim and ride a bike, as well as finding that her symptoms are controlled by medication, are not supported by substantial evidence. Although it is true that Claimant reported to her physical therapist that swimming and biking did not increase the pain in her lower back, R. 407, the ALJ's reliance on this statement to support his functional domain finding is problematic for several reasons. First, the Court notes this statement appears in Claimant's June 2008 discharge notes after a four-week course of physical therapy; more recent evidence shows that Claimant experienced "pain all up and down [her] spine, to any

manipulation or palpation," that her symptoms were "worsening," and that she "appears to be in agony" from her back pain. R. 472, 474, 489, 551, 553, 559, 651. Indeed, more recent evidence also suggested that Claimant suffers severe pain in her legs roughly twice per month, making it difficult for her to even walk. R. 54-55, 72-73, 561, 564, 651. Moreover, the Court notes that Claimant testified at the hearing that she does not ride her bike, go for walks, or play with other children now, although she was able to do these before the onset of her back pain symptoms. R. 51.

Second, the Court notes that Claimant's doctors consistently diagnosed her with pain in her mid and upper back or along her entire spine, rather than simply her lower back. R. 464, 468, 472, 474, 490, 551, 555, 669. Thus, even if activities like swimming and biking do not increase Claimant's pain to her lower back, this does not support the conclusion that she can still perform such activities in light of her mid and upper back pain and painful walk. This is particularly the case where the Claimant's physical therapist encouraged her to bike and swing only "*so long as no pain was reported.*" R. 407 (emphasis added). In short, the record does not support the ALJ's assertion that Plaintiff can engage in activities like swimming or riding a bike.

The ALJ's assertion that Claimant's symptoms were basically controlled by medication is similarly troublesome. The Court acknowledges the ALJ's statement that Claimant reported to her mental health doctor, James A. Kibler, M.D., that she was not taking her medication but that she thought the medication helped her. R. 20 (citing R. 664). A close reading of Dr. Kibler's notes, however, reveal that the only medication Claimant

reported that she was not taking was Zoloft;[3] she reported that she had continued to take all of her pain medications. R. 664. Moreover, Claimant only reported that she thought Zoloft – as opposed to her pain medications – had helped her, although her mother was "not too sure" that it had. R. 664. Thus, to the extent the ALJ intended to rely on Dr. Kibler's notes to show that Claimant was not taking her pain medications, this argument must fail.

Of course, the Court notes the ALJ's belief that Claimant's pain was "most likely somatoform disorder," R. 16, and he may have intended to point to Claimant's failure to take Zoloft – which Claimant reported helped her – to show that Claimant's pain could have been controlled by this drug and was therefore not as severe as she alleged. However, the ALJ cites no definitive diagnosis in the record to support a finding that Claimant suffered from a somatoform disorder; on the contrary, he only points to one doctor who indicated that there was "some question" as to whether Claimant might be suffering from "somatization disorder." R. 16 (citing R. 329). Indeed, the ALJ specifically states that while Claimant was diagnosed with chronic pain, there was no definitive diagnosis for the source of that pain. Therefore, to the extent the ALJ relied on Claimant's failure to take Zoloft to support his conclusion that her symptoms are controlled with that medication is unsupported by the record and must fail.

In light of record evidence showing that Claimant could not engage in physical education, could not do any significant lifting or carry her books, had significant back pain, and frequently had difficulty walking, the Court agrees with Plaintiff that the ALJ failed to

---

[3] According to a medical website, Zoloft is an antidepressant medication used to treat depression and a variety of other mental or mood disorders. See http://webmd.com/drugs, (search "Zoloft"; then follow "Sertraline - Oral" hyperlink) (last visited June 23, 2012).

adequately explain his assessment of Claimant's ability to move about at an efficient pace and engage in activities such as running and jumping and "a full range of individual and group physical fitness activities." 20 C.F.R. § 416.926a(j)(2)(iv)-(v).

The Commissioner makes a reasoned attempt to show that other evidence in the record demonstrates that Claimant's ability to move about and manipulate objects is not as severe as Claimant alleges. Comm'r's Br., pp. 10-15. It may well be, as the Commissioner argues, that in light of the overall record, Claimant's functioning in this domain requires a finding of less than a marked limitation. However, it is incumbent upon the ALJ to support his finding as to the limitation on Claimant's functioning in this domain. Because the Court concludes that the ALJ did not adequately support his finding that Claimant experienced less than a marked limitation in the domain of moving about and manipulating objects, the case should be remanded so that the ALJ can re-evaluate the record evidence and provide a reasoned functional equivalence assessment.

### 3. Plaintiff's Remaining Contention

Although the Court has determined that the case should be remanded based on the failure to adequately support the ALJ's finding that Claimant has less than a marked limitation in the domain of moving about and manipulating objects, the Court will briefly address Plaintiff's related argument that the ALJ failed to find that Claimant has an extreme limitation in the domain of health and physical well-being. Plaintiff argues that "all indications are of an extreme rather than [a] marked impairment in this domain" and that the ALJ failed to provide evidentiary support for his marked finding. Pl.'s Br., p. 7. By contrast, the Commissioner asserts that the ALJ's finding is supported by substantial evidence.

Comm'r's Br., pp. 13-14.

Under the domain of health and physical well-being, the Commissioner must consider "the cumulative physical effects" of the claimant's impairments or treatment for those impairments that were not considered in the domain of moving about and manipulating objects. 20 C.F.R. § 416.926a(l). Examples of cumulative physical effects from a claimant's impairments or treatment include weakness, fatigue, or local or generalized pain. Id. § 416.926(l)(1). Notably, the same impairment may have effects in both the domains of health and physical well-being and moving about and manipulating objects because it may affect "the child's general physical state and fine or gross motor functioning." SSR 09-8p.

In light of the Court's recommendation that this case should be remanded so that the ALJ can re-evaluate the record evidence regarding the effect of Claimant's pain symptoms on her ability to move about and manipulate objects, the Court need not resolve this issue. The ALJ's re-evaluation of the evidence regarding Claimant's pain symptoms on remand may impact his finding as to the cumulative physical effects of those symptoms. In other words, it is unclear whether the ALJ will again conclude that Claimant has a marked – as opposed to extreme – limitation in the domain of health and physical well-being. Of course, on remand, the ALJ must support his findings in each domain by citing to relevant evidence. See Martin, 894 F.2d at 1529. In this regard, "it is recommended that the ALJ make specific findings in each domain, citing the rules being applied and the weight accorded to the evidence of record. . . ." Wimberly v. Astrue, CV 509-026, doc. no. 14 (M.D. Ga. Sep. 2, 2009).

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 27th day of June, 2012, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE